# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SCCY INDUSTRIES, LLC and JOSEPH V. ROEBUCK,**

    **Plaintiffs,**

**v.**        Case No:   6:17-cv-1495-Orl-31KRS

**PAUL F. JANNUZZO, E. MONIKA BERECZKY, JOHN DOE, KRONSTADT ADVISORY SERVICES LLC, TRANS-CARPAT RESEARCH & ANALYSIS LLC and DE MOOIE HOND LLC,**

    **Defendants.**

## ORDER

This Matter comes before the Court on the Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 68), the Response and Cross-Motion filed by the Plaintiffs (Doc. 79) and the Defendant's Response (Doc. 82).

### I.    Background

The Plaintiff's claims primarily arise from a January 11, 2017 meeting between Plaintiff Joseph Roebuck—the founder and CEO of SCCY Industries—and Defendant Paul Jannuzzo. Prior to that meeting, SCCY (and Roebuck) had decided to terminate Jannuzzo from his position as Chief Operating Officer of SCCY. Previously, Jannuzzo had worked for SCCY as an independent consultant and attorney from March 2015 through October 2015. Doc. 51 ¶ 6. During that time, it is alleged that Jannuzzo was "serving as SCCY's 'outside' General Counsel." *Id.* Beginning in November 2015, Jannuzzo worked full-time for SCCY as a corporate officer and attorney, and served as SCCY's Chief Operating Officer and General Counsel. *Id.* Jannuzzo later recommended

Defendant Monika Bereczky (his wife) for employment as a compliance manager for SSCY, and she began working there in May of 2016. *Id.* ¶ 9. During her time as compliance manager, Bereczky reported to Jannuzzo. *Id.*

In November of 2016, SCCY's finance and accounting department reported to Roebuck that Jannuzzo and Bereczky had been submitting and receiving payment for false and/or fraudulent expense reports. Doc. 51 ¶ 51. Roebuck then determined that he should terminate their employment, but he also decided that he should wait until after a firearms industry trade show, which was scheduled to take place from January 17, 2017 to January 20, 2017. *Id.* ¶ 52.

Before the trade show took place, in early to mid- December of 2016, Roebuck learned that, at least twice, Jannuzzo "had directed a SCCY employee to create an organizational chart wherein SCCY's finance and accounting department reported to Jannuzzo." *Id.* ¶ 53-54. On December 12, 2016, Roebuck met with Jannuzzo to confront him about the unauthorized organizational chart. During this meeting, Jannuzzo yelled and at one point "pulled a knife from his pocket and slammed it on the conference room table" and threatened Roebuck with physical violence. *Id.* ¶ 55. Roebuck told Jannuzzo "that he felt like Jannuzzo was going to hit him," and Jannuzzo replied "[i]f I hit you, you wouldn't get up." *Id.* After that meeting, Roebuck discussed the situation with members of the SCCY executive team and outside counsel, ultimately deciding to terminate Jannuzzo's employment on January 11, 2017. *Id.* ¶ 56.

On the morning of January 11, Jannuzzo confronted Wayne Holt, the President of SCCY, and "threatened him with violence and the imminent exposure of an audio recording that Jannuzzo had surreptitiously made of [him] without [his] consent." *Id.* ¶ 57. Jannuzzo played the audio recording for Holt, on which Holt could be heard "speaking poorly of other SCCY employees." *Id.* Jannuzzo told Holt that, if he did not "help" Jannuzzo, he would play the audio recording for

Roebuck. *Id.* Jannuzzo also put a three-inch thick stack of papers on Holt's desk, advising him to look at the documents and call Roebuck. *Id.* ¶ 58. The documents appeared to be related to a pending regulatory compliance matter. *Id.* Holt contacted Roebuck after Jannuzzo left the office in order to advise Roebuck of the situation. *Id.* When Roebuck arrived at the office, Jannuzzo was gone. *Id.* ¶ 59. Roebuck tried to speak with Bereczky, but she refused to speak with him. *Id.* However, Bereczky contacted Jannuzzo and asked him to return to the office. *Id.*

Later, Jannuzzo met with Roebuck, Holt, Bereczky, and the SCCY Executive Vice President. *Id.* ¶ 60. Jannuzzo yelled and insulted them, and ultimately "waived a manila colored folder . . . in front of Roebuck's face," and demanded that Roebuck and SCCY pay Jannuzzo and Bereczky or he would turn the documents over to "the Feds" and "the media." *Id.* ¶ 61. Based on Jannuzzo's and Bereczky's explanation of the documents contained in the manila folder, Roebuck and the SCCY President believed that "their disclosure could cause the revocation of SCCY's license to manufacture firearms and put SCCY out of business." *Id.* ¶ 63. Jannuzzo and Bereczky demanded $260,000 in cash, as well as $260,000 to be paid over the course of a year. This amount was based on a combination of their salaries. *Id.* ¶ 62.

When Roebuck stated that he could not get that amount of money immediately, Jannuzzo "set his cell phone on the table and placed a phone call, via the speaker phone function, to a man who claimed to be in Texas." *Id.* ¶ 64. Jannuzzo told the mystery man ("John Doe") to send "that package we talked about" to the "Feds and media." *Id.* John Doe stated that it would take him twenty minutes, at which time Jannuzzo began audibly counting down the passing minutes. *Id.* After Jannuzzo and Bereczky continued to yell at Roebuck, they "forced Roebuck to drive to a Bank of America branch," along with the SCCY President, while Jannuzzo and Bereczky followed them in a separate car. *Id.* ¶ 66. Upon arrival at the bank, Jannuzzo went inside with Roebuck and sat down

next to him as Roebuck transferred $260,000 to a bank account that was jointly owned by Jannuzzo and Bereczky. *Id.* ¶ 66-67.

After they left the bank, Jannuzzo and Bereczky gave Roebuck a consultancy agreement ("Agreement") requiring SCCY and Roebuck to wire them $260,000, which had already occurred. *Id.* ¶ 70. The Agreement also required SCCY and Roebuck to pay them an additional $260,000 in weekly installments over the course of the upcoming year. *Id.* The SAC states that Roebuck signed the Agreement in his capacity as CEO of SCCY, "under duress, in fear of physical harm, and in fear of what Jannuzzo, Bereczky, and John Doe might do to damage him and SCCY." *Id.* ¶ 71. After that day, Jannuzzo "continued to harass Roebuck in a series of efforts to force SCCY and Roebuck to pay Jannuzzo and Bereczky the weekly payments." *Id.* ¶ 73.

While the aforementioned series of events appears to be the primary basis for the SAC, the Plaintiffs also claim that all of their payments to Jannuzzo and Bereczky were wrongful, even before November of 2016, when Roebuck learned of the fraudulent expense reports.[1] The Plaintiffs allege that while Jannuzzo was working for them as General Counsel, he also was working for a third party, Robert Suber and his company M.G. Suber & Associates (collectively "Suber"). *Id.* ¶ 114-145. Unbeknownst to SCCY, Jannuzzo represented both SCCY and Suber in negotiating and signing a distributor agreement between the two entities. *Id.* The Plaintiffs aver that this simultaneous representation resulted in less-than-favorable terms for SCCY. *Id.* The Plaintiffs also claim that

---

[1] The allegedly wrongful payments include payments that were made to three different LLC Entities. All three companies are defendants (collectively, "LLC entities") in this suit, along with Jannuzzo and Bereczky. In October 2013, Kronstadt Advisory Services, LLC, was formed; it is wholly owned and operated by Jannuzzo. *Id*. ¶ 10. Bereczky wholly owns and operates a different LLC, De Mooie Hond, which was also formed in October 2013. *Id.* ¶ 11. A third LLC, Trans-Carpat Research & Analysis, which was formed in November 2013, is fifty-percent owned by Jannuzzo through Kronstadt and fifty-percent owned by Bereczky through De Mooie Hond.

Jannuzzo gave confidential information to Suber, which ultimately led to a situation in which Suber sent a demand letter to SCCY for not fulfilling its obligations with respect to a product order. *Id.*

In addition to the previously discussed events, the Plaintiffs claim that Jannuzzo engaged in unauthorized surveillance of Roebuck's emails by copying them to a secret account that only he knew of and could access. *Id.* ¶ 146-163. The Plaintiffs also allege that Jannuzzo submitted a false affidavit in a state court matter in order to retaliate against SCCY and cause SCCY to incur substantial litigation costs. *Id.* ¶ 93-113.

## II. Legal Standards

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

### III. Analysis

The Second Amended Complaint ("SAC") alleges ten causes of action: extortion against all Defendants (Count I); violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against All Defendants (Count II); conspiracy to violate RICO against all Defendants (Count III); violation of the Civil Remedies for Criminal Practices Act ("Florida RICO") against all Defendants (Count IV); conspiracy to violate Florida RICO against all Defendants (Count V); civil conspiracy against all Defendants (Count VI); breach of fiduciary duty against Jannuzzo (Count VII); fraud in the inducement against all Defendants (Count VIII); unjust enrichment against all Defendants (Count IX); and fraudulent conversion against all Defendants except John Doe (Count X).

#### A. Plaintiff's Cross-Motion for Leave to Dismiss Claims and Drop Parties

As a threshold matter, the Plaintiffs seek leave to dismiss Counts I, II, III, VI, and X; they also ask that the Court drop the Defendant LLC entities from Count VIII. Finding no good cause for permitting the Plaintiffs to once again amend their complaint, the Court declines to grant the Plaintiffs leave to amend, and instead construes the Plaintiffs' cross-motion as a concession to the Defendants' arguments in the Motion to Dismiss with respect to Counts I, II, III, VI, VIII, and X. Accordingly, Counts I, II, III, VI, and X will be dismissed in full, and the LLC entities will be dismissed from Count VIII.

#### B. Defendants' Motion to Dismiss

The Defendants move to dismiss the entire SAC. However, the Defendants do not make specific arguments as to why each individual count should be dismissed. The Court addresses the Defendants' arguments below.

### 1. Whether the Written Agreement Bars Plaintiffs' Claims

The Defendants first argue that the written agreement bars the Plaintiff's claims. Doc. 68 at 9. Taking the Plaintiffs' allegations as true, the only reasonable conclusion is that the Agreement was procured through fraud and duress. It is unclear whether the Defendants contend that the Agreement bars all of the Plaintiffs' claims, or just some of them, but either way, the Court finds the Defendants' arguments unpersuasive. The Court has no obligation to consider the terms of the Agreement in ruling on the Motion to Dismiss, and it declines to interpret or analyze the Agreement's terms at this stage.

### 2. Violations of the Civil Remedies for Criminal Practices Act: Counts IV and V

The Defendants move to dismiss Counts IV and V (Florida RICO), contending that they do not adequately allege that the Defendants engaged in a pattern of criminal activity sufficient for civil liability. The SAC alleges both a substantive violation and conspiracy to commit a violation of the Civil Remedies for Criminal Practices Act ("Florida RICO"). The statute provides that,

> [i]t is unlawful for any person: . . . Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

Fla. Stat. § 772.103(3) (emphasis added). A "pattern of criminal activity" is defined as,

> engaging *in at least two incidents* of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents .... For the purposes of this chapter, the term "pattern of criminal activity" shall not include two or more incidents of fraudulent conduct arising out of a single contract or transaction against one or more related persons.

Fla. Stat. § 772.102(4) (emphasis added).

The Defendants argue that Florida law requires more than "simply proving two isolated acts" to constitute a pattern of criminal activity, and that the Plaintiff has failed to establish continuity.

Doc. 68 at 13-16. While the Plaintiff labels payments made to the Defendants over an extended period of time as acts of money laundering, the Plaintiff does not make sufficient allegations to establish more than "a single scheme with a discrete goal." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1267 (11th Cir. 2004). Those acts that were actually pled as an *ongoing pattern* of criminal activity occurred only between November of 2016 and February of 2017; that period of time is not substantial enough to give rise to liability under Florida RICO. *Cf. Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1266 (11th Cir. 2004). Although the SAC mentions other actions, such as perjury and unauthorized disclosure of confidential information, that take place over a longer period of time, the SAC does not adequately allege that the various sets of actions are interrelated or that all of the relevant actions were criminal.

Count V, which alleges a conspiracy to violate the Florida RICO statute, also fails. The SAC failed to state a substantive Florida RICO claim, and Count V "adds nothing," and instead "simply concludes that the defendants [conspired] to commit conduct which in itself does not constitute" a Florida RICO violation. *See Jackson*, 372 F.3d at 1269. Accordingly, Counts IV and V will be dismissed.

### 3. Whether the Plaintiffs' Allegations of the Circumstances Constituting Fraud are Sufficiently Pled

The Defendants contend that Counts VII (breach of fiduciary duty) and VIII (fraudulent inducement) fail because, although they are based on allegations of fraud, they were not pled with particularity.[2] Doc. 68 at 11. There are two types of fraudulent allegations at issue. The first is fraudulent inducement. Under Florida law, "fraud in the inducement" occurs when one party's

---

[2] The Defendant makes the same argument with respect to Counts IV and V, but the Court has already found that those Counts fail to state a claim on which relief can be granted.

ability to negotiate and make informed decisions as to the contract is undermined by the other party's pre-contractual fraudulent behavior. *Bradley Factor, Inc. v. United States*, 86 F. Supp. 2d 1140, 1145 (M.D. Fla. 2000). The elements of a claim for fraud in the inducement in Florida are: (1) that the defendant misrepresented a material fact; (2) that the defendant knew or should have known that the statement was false; (3) that the defendant intended that the representation would induce the plaintiff to enter into a contract or business relation; and (4) that the plaintiff was injured by acting in justifiable reliance on the misrepresentation. *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1425 (S.D. Fla. 1996) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). In addition to the fraudulent inducement claim, Count VII alleges that Jannuzzo's fraudulent activity also breached his fiduciary duties to the Plaintiffs.

The unwieldiness of the SAC does not go unnoticed by the Court. While the Plaintiffs' claims could have been pled in a more concise and orderly manner, the Plaintiffs have adequately pled fraud with particularity. The Defendants are grouped together in the individual Counts, but the factual allegations preceding the Counts attribute various actions constituting fraud to the Defendants as individuals. The SAC contains detailed and thorough allegations of fraudulent activity against Jannuzzo, Bereczky, and John Doe, and those allegations are sufficient to survive the Motion to Dismiss.

### 4. Count VII: Breach of Fiduciary Duty

The Defendants argue that there was no existing fiduciary duty at the time of the alleged extortion, because Jannuzzo's fiduciary duties terminated with his employment. Doc. 68 at 22. However, the bulk of the alleged extortion activity took place on the very day Jannuzzo's employment was to be terminated, and it is clear that, taking the SAC as true, the extortion plan required substantial preparation and had been in the works for some time prior to Jannuzzo's actual

termination. Thus, any post-termination lack of fiduciary duty does not negatively impact the viability of the Plaintiffs' claims.

The Defendants also contend that, to the extent that the breach of fiduciary duty claim is based on Jannuzzo's submission of an affidavit in the *Jennings* matter, it is barred by Florida's litigation privilege. Doc. 68 at 23. Florida's litigation privilege is an affirmative defense, and where a determination of whether the privilege applies involves factual development, "a motion to dismiss is not the appropriate method to resolve this issue." *Velez v. Bank of Am., N.A.*, No. 8:18-cv-88-T-26MAP, 2018 WL 1858148, at *3 (M.D. Fla. Apr. 18, 2018). The Court will not determine whether the litigation privilege applies at this time.

### 5. Defendant Bereczky

The Defendants argue that the Second Amended Complaint fails to state a claim against Bereczky, because mere guilt-by-association is insufficient. Doc. 68 at 23. While the Defendants describe the SAC as "repeatedly lumping [Bereczky] in with Jannuzzo," when the SAC alleges that Jannuzzo and Bereczky both did something or said something, the Court takes that allegation as true at the motion to dismiss stage. Whether or not Bereczky actually did those things that the SAC alleges she did is a factual question.

### 6. The LLC Defendants

The Defendants make two procedural arguments as to why the LLC entities are not proper defendants in this case. The Plaintiffs only contend that the LLC entities are proper Defendants in the Florida RICO and unjust enrichment claims.[3] First, the Defendants argue that the LLC entities were not properly added as Defendants, citing Federal Rule of Civil Procedure 21. While Rule 21

---

[3] Because the Florida RICO claims will be dismissed, only the unjust enrichment claim will be considered by the Court.

provides that "[p]arties may be dropped or added by order of the court," it does not indicate that court order is the only means of adding parties. "Under Rule 15, Fed. R. Civ. P., parties may be added or dropped when an amendment is made to a complaint as a matter of course." *Pretty Punch Shoppettes, Inc. v. Creative Wonders, Inc.*, 750 F. Supp. 487, 493 (M.D. Fla. 1990).

Next, the Defendants argue that the LLC entities are not subject to personal jurisdiction. The Court considers two questions in resolving whether personal jurisdiction exists. "First, [courts consider] whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). "Second, [courts] examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* The Due Process Clause "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Both committing a tortious act within the state and operating, conducting, engaging in, or carrying on a business or business venture in the state subject persons to jurisdiction under Florida's long-arm statute. Fla. Stat. § 48.193.

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam); *see also Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (describing procedure for plaintiff to establish personal jurisdiction under Florida's long-arm statute). When a defendant challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier v. Sun*

*Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Posner,* 178 F.3d at 1214; *see also Polski Linie Oceaniczne*, 795 F.2d at 972. When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, a court must construe all reasonable inferences in favor of the plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

The Plaintiffs pled that the LLC entities both committed tortious acts within Florida and operated, conducted, engaged in, or carried on a business or business venture within the state of Florida. The Plaintiffs also pled that that all Defendants, including the LLC entities, purposefully availed themselves of the privilege of conducting activities within the forum state by committing intentional torts directly aimed at the forum state (because they were aimed at SCCY and Roebuck) and causing injury in the forum state that Defendants should have reasonably anticipated. The SAC allegations are sufficient to establish personal jurisdiction.

In addition to their procedural arguments, the Defendants argue that the SAC does not state a claim against the LLC entities. The Court addresses this argument only with respect to Count IX, which alleges unjust enrichment against all Defendants.[4] The elements of a claim for unjust enrichment under Florida law are: (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant accepted and retained the benefit; and (3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it. *Duncan v. Kasim, Inc.*, 810 So.2d 968, 971 (Fla. 5th DCA 2002). The SAC alleges that the Plaintiffs conferred a monetary benefit on the LLC Defendants in the form of specific wire transfers and written checks; that the LLC Defendants voluntarily accepted and retained those benefits; and that, because the benefits were conferred as a result of unlawful conduct by the Defendants, it would be

---

[4] *See supra* n.3 and accompanying text.

inequitable to allow the LLC entities to retain those benefits. Accordingly, the Plaintiffs have adequately pled unjust enrichment with respect to the LLC entities.

## IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss (Doc. 68) is **GRANTED IN PART** and **DENIED IN PART**. Counts I, II, III, VI, and X are **DISMISSED** in full. Because the Plaintiffs have indicated that they do not wish to pursue those claims, the Court declines to grant them the opportunity to replead them. The LLC Entities are **DISMISSED** from Count VIII. Counts IV and V are **DISMISSED** without prejudice. If the Plaintiffs wish to file an amended complaint, they must do so within twenty-one (21) days of the date of this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 2, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party