## AFFIDAVIT OF PAUL F. JANNUZZO

STATE OF GEORGIA

COUNTY OF CHATHAM

BEFORE ME, the undersigned authority, personally appeared PAUL F. JANNUZZO, who after being first duly sworn, deposes and says:

1. I am sixty-one years old. I am competent to make this Affidavit.

2. In met Joe Roebuck in March of 2015. He hired me that same month to assist him with an internal investigation at SCCY Industries ("SCCY"). The discussions for my employment occurred, in part, on an airplane that Mr. Roebuck rented to pick me up in Savannah, Georgia for a flight to Atlanta.

3. While flying home from Atlanta, we discussed the future of SCCY and its current officers and management hierarchy. During that flight, he asked if I would be interested in becoming the President of SCCY. I declined the offer to become its President as it already had one in place, although his tenure appeared to be doubtful. He next asked if I wanted the position of Chief Operating Officer ("COO"). I told him that I was in fact interested in that position and accepted the position.

4. During the flight, I advised Mr. Roebuck that because of my obligations to three (3) other clients, I needed a period of transition to assume the position at SCCY. That was acceptable to Mr. Roebuck. We discussed and agreed that I would begin work, as I did, one week per month.

5. In or about August of 2015, I began working at SCCY for two (2) weeks per month. In October of 2015, I began working at SCCY as the COO on a full-time "W2" employee basis.

6. One of my primary responsibilities at SCCY involved compliance with State and Federal laws, regulations and guidelines as firearms manufacturers are heavily regulated by various agencies of government including the ATF, Customs and the State Department. I am a licensed attorney and member in good standing with the State Bar of New Jersey. My two decades of industry experience was helpful in addressing a number of matters involving compliance with regulations and the law as soon as I began as COO with SCCY.

7. Sometime in the summer of 2016, I was surprised to learn that there was a civil trial pending in Daytona Beach. Although I was only SCCY's COO and not its General Counsel, I was surprised Mr. Roebuck did not inform me of the matter. When we first discussed the case, he informed that is just a "collection" action.

8. As the trial approached, the name Brian Eicher surfaced repeatedly. Apparently, Mr. Eicher had been a minority owner or partner of SCCY years earlier and had relevant knowledge of facts with respect to the pending trial in Daytona Beach captioned *Jennings vs Roebuck, et al.*

9. I do not have records of SCCY or from the firm of Kinsey, Vincent and Pyle ("KVP") but my recollection is that Roebuck informed me that as the trial approached sometime in late July of 2016 or very early August 2016, conversations had begun between Eicher, Roebuck and KVP attorneys precipitated by a deposition or trial subpoena that was served on Eicher by KVP attorney Drew Williams. As I understood it from Mr. Eicher, as discussed below, a subpoena had been delivered to his work place at Kennametal. This annoyed Mr. Eicher, greatly.

10. During this period before trial in late July of 2016, a controversy broke out involving Eicher, Roebuck, KVP attorneys and in particular, Drew Williams. This controversy resulted in a telephone call to me from Roebuck's attorney, Drew Williams. The conversation concerned me greatly.

11. Drew Williams told me by phone that Mr. Eicher had come to visit with him stating Eicher was angry about being served a subpoena. Drew Williams further told me that Eicher told

him that he would testify for "*whomever paid him the most.*" Mr. Williams told me that at that point, he threw Mr. Eicher out of his office and was calling Roebuck and myself about the matter.

12. I subsequently met with Mr. Eicher and Mr. Roebuck in the SCCY conference room. Eicher said that he would testify for whomever paid him the most. I explained to him that any payment or compensation of any kind for his favorable testimony was not possible. Nevertheless, he stated that Roebuck had to "*keep me happy.*" I viewed the comment, in the context of what was transpiring: that is, *it was crystal clear to me that Eicher's testimony would not be favorable to Roebuck without compensation.* He then repeated to me, he would testify for whomever paid him the most, precisely the words of solicitation of a bribe Drew Williams described to me by phone with respect to the encounter he had with Eicher earlier that day.

13. Eicher was not interested in talking reason or rationally. He made it clear that nothing short of an offer of payment for his testimony would satisfy him, period. Immediately, thereafter, he and Roebuck left the conference room and met in Roebuck's private office at SCCY with the door shut. I was not invited to participate in the meeting. It concerned me in light of the conversations we just had with Eicher and the conversation I had earlier that day with Drew Williams by telephone regarding compensation for favorable testimony from Eicher.

14. Another meeting between Mr. Roebuck and Mr. Eicher took place on August 9, 2016, confirmation of which is set forth in the attached **Exhbit 1** to my affidavit. **Exhibit 1** is a text message which, in pertinent part reads, from Roebuck: "*Hi Brian it's Joe, can you meet me at Panera (ISB) next Tuesday, August, 9th, anytime after 10:00am? Please let me know.*" Eicher responded: "*Yes. What time works best for you*"? Roebuck emailed back: "*At 10, if good for you.*" Eicher then stated in the email chain: "*That's fine. I'll be there at 10.*" Roebuck then responded: "*See you then.*" I do not know what Roebuck and Eicher discussed at the meeting as I did not attend, but Roebuck informed me the two met.

15. As the Court will recall, I sat through the entire trial with the KVP attorneys, next to Mr. Roebuck. I was not informed by Roebuck or the KVP attorneys for Roebuck whether they informed Jennings's counsel or the Court of the solicitation of a bribe made to them and again to Roebuck that same day at SCCY offices. I presumed that the information was turned over, at least to Jennings's counsel, as it might have been pertinent to examination of at least Eicher and/or Mr. Roebuck.

16. I have been shown what is attached to my Affidavit as **Exhibit 2**, an email from one of Jenning's counsel, James Sabalos, to Drew Williams dated April 27, 2017. In the email, Mr. Sabalos states that Drew Williams denied, in their phone conversation, that Eicher had ever

discussed with him compensation for his testimony or a bribe. That is inconsistent with my conversations with Mr. Williams. The conversation Mr. Williams recounted to me with Mr. Eicher, set forth above, *involved far more* than "crazy talk" which Drew Williams admitted to in our conversation. Moreover, it was an office visit, not a telephone conversation.

17. Immediately after the trial, I became concerned when Eicher was hired at SCCY for a salary three (3) times the level of his Kennemetal salary, given a $20,000 bonus, and *carte blanche* to do what he wished at SCCY. Today, Mr. Eicher is the President of SCCY. I do not know what, if any, his interest in SCCY is or the salary he is paid as President of SCCY.

18. In early December of 2016, I was at the SCCY storage facility at Hyde Park. As COO, I was familiar with parts and inventory. While there, I noticed for the first time that several ATV's SCCY had in storage were missing. I asked Joe Roebuck if he knew what happened to these valuable ATV's that were missing, and he told me: "*I gave them to Brian this summer*". While saying it, Mr. Roebuck had a smile that I had seen before when he thought he had been clever on a matter with someone. I cannot state whether Eicher picked these items up immediately before trial or sometime after trial.

19. The facts described above that I have personal knowledge of troubled me particularly because Roebuck had told me that he had not seen Eicher for many years before this civil case with Jennings.

FURTHER AFFIANT SAYETH NOT

_____
Paul F. Jannuzzo

STATE OF GEORGIA, COUNTY OF CHATHAM

Sworn to (or affirmed) and subscribed before me this 24th day of May, 2017, by Paul F. Jannuzzo who is personally known to me or has produced GA Driver's License as Identification.

_____
NOTARY PUBLIC

(Print, Type or Stamp Commissioned Name of Notary Public)

Deborah Ann Moore
NOTARY PUBLIC
Chatham County, GEORGIA
My Comm. Expires
12/13/2020